IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

RICHARD M. ELBERT          )
                           )
    Plaintiff,             )
                           )
        v.                 )    Case No. 11-0428-CV-W-HFS
                           )
CITY OF KANSAS CITY, MISSOURI, )
  et al.,                  )
                           )
    Defendants.            )

**ORDER**

Before the court is a motion to dismiss, filed by defendants Kansas City Board of Police Commissioners "the Board;" and police officers Balsley; Campbell; Cote; Enig; Hernandez; Johnson; Muhlbauer; Sanders; and Pronske "the police defendants" (sometimes collectively referred to as "the KCPD defendants") (doc. 87). Pro se plaintiff has filed two motions for temporary restraining orders (docs. 92 and 93); motion for return of property (doc. 154); motion for class certification (doc. 189); motion to appoint counsel (doc. 204); and motion for discovery (doc. 213). Motions to dismiss have been filed by defendants City of Kansas City, Missouri "the City" (doc. 106); officials with the Kansas City, Missouri Regulated Industries Division, Gary Majors and Jim Ready "the City Regulators" (doc. 108); and John Harbrucker, Regina Wagner, and Patrice Winston "the City employees" (sometimes collectively referred to as " the City

defendants"(doc. 110).[1] Detective Robert Gibbs has also filed a motion to dismiss (doc. 137).

## Factual and Procedural Background

According to plaintiff's allegations, the circumstances of this case are as follows:

On or around November of 2009, plaintiff rented several residential units located at 8111A, 8111B, 8111C, 8111D, and 8113 on Troost Avenue in Kansas City, Missouri. (Amended Complaint: ¶¶ 1-5). Plaintiff resided in one of the units, and rented the other units for residential purposes and office space. (Id: ¶¶ 5-6). As a member of a non-profit social club, Kansas City Apollo Country Club, plaintiff permitted other members to use the units on a weekly basis for social functions such as weddings and birthday parties in return for rental and the costs of utilities. (Id: ¶¶ 8-10). Plaintiff states that he was to perform management duties in exchange for monthly compensation of $9,800 once the social club became fully active - anticipated to occur in the spring of 2012. (Id: ¶¶ 11-12).

On about September 25, 2010, while at the property located at 8111A Troost Avenue, plaintiff was approached by several police officers who inquired about the number of cars in his driveway. (Id: ¶¶ 14-15). Plaintiff explained that he invited some friends over for a private gathering

and showed the officers the guest list; after sitting in the driveway for a short period of time, the officers left the residence. (Id: ¶¶ 16-22).

---

[1]Prior to withdrawal, Senior Associate City Attorney Douglas McMillan represented the City defendants, who also included employees of the Kansas City Fire Department, defendants Ronald Downing, Robert Richardson and Jim Williamson. These defendants have filed answers to the second amended complaint (doc. 139); however, they have not joined the pending dismissal motions and have not filed briefing in support of their contention that the claims asserted against them are barred by absolute and official immunity.

On about October 22, 2010, at approximately 2:00 a.m. the police defendants, Patrice Winston, and Regina Wagner entered plaintiff's residence without probable cause or a search warrant while he was a hosting a private party. (Id: ¶¶ 24-29). Officer Johnson advised plaintiff that the party was illegal, and the police defendants conducted a search of plaintiff's living quarters. (Id: ¶¶ 30-35). Regina Wagner threatened to write a ticket for the illegal sale of alcohol, and directed plaintiff to provide identification; plaintiff reluctantly produced an incorrect identity due to an outstanding traffic warrant. (Id: ¶¶ 36-45). Although all guests at the party were co-renters of the residence, the police defendants, Regina Wagner, and Patrice Winston demanded that all persons leave the premises. (Id: ¶¶ 46-51). Plaintiff was arrested by Officer Johnson for selling alcohol without a license, charged with obstruction of an investigation, and jailed for four days until he was released on his own recognizance. (Id: ¶¶ 52-56). On October 27, 2010, plaintiff filed a complaint

with the Kansas City Missouri Police Department-Office of Citizen Complaints, but did not receive a response. (Id: ¶¶ 57-58). On or about October 28, 2010, plaintiff met with City defendants, Gary Majors and Jim Ready, regarding the actions taken by City defendants, Regina Wagner and Patrice Winston, but was told that plaintiff's rights were not violated and no action would be taken against the City defendants. (Id: ¶¶ 61-62).

On or about October 25, 2011, the police defendants, City defendants, and Fire Dept. defendants sought to enter the property to inspect for possible fire code violations. (Id: ¶¶ 67-68). After speaking with plaintiff, the defendants left the premises, but plaintiff's guests indicated their discomfort. (Id: ¶¶ 69-79). On or about August 21, 2011, at approximately 2:15 a.m., City defendant Harbrucker entered the premises with John Doe police officers who directed

3

plaintiff's guests to leave. (Id: ¶¶ 83-95). Plaintiff states that defendant Harbrucker advised him that if the gatherings continued, Kansas City authorities and police officers would return and plaintiff was issued a ticket directing him to appear in court; however, by letter dated August 25, 2011, plaintiff was advised that he would not be prosecuted. (Id: ¶¶ 96-98).

On December 3, 2011, while playing dominoes with a friend at the 8111A Troost location, police officers arrived in response to a "shots fired" call and made a cursory examination of 8111A and 8111C before leaving. (Id: ¶¶ 99-106).

During the early morning hours of December 10, 2011, plaintiff permitted a friend, Tameka Wagner, to host a birthday party at 8111A. (Id: ¶¶ 108-113). Police officers arrived, tackled one of plaintiff's security personnel, battered in the front door, and threw a flash bang grenade which burned plaintiff's clothing. (Id: ¶¶ 114-21). The officers, with weapons drawn, directed plaintiff and the guests to lie on the floor; Detective Gibbs then permitted plaintiff to sit in a chair. (Id: ¶¶ 122-30). Police officers searched the premises at 8111A and 8111C, and searched the guests before directing them to leave. (Id: ¶¶ 131-38). Fire Marshal Williamson advised plaintiff that because the search revealed several code and health violations, gas and electric services would be turned off. (Id: ¶¶ 139- 56). Detective Gibbs advised plaintiff he was in custody for selling liquor without a license, and was taken to police headquarters; after an interview he was released and was not charged with a crime. (Id: 157- 75). When he returned home he discovered that the front door to 8111A was demolished and unsecured and that there was no gas service; he also observed empty liquor bottles and food items removed from the refrigerators. (Id: ¶¶ 176-86).

On December 12, 2011, Fire Marshal Williamson, police officers, and employees of

4

Kansas City Power and Light arrived to terminate electrical power at 8111A, 8111B, 8111C and 8111D with posted notice. (Id: ¶¶ 196-200). Plaintiff states that Fire Marshal Williamson instructed the police officers to arrest him if he continued to occupy the premises and that the facility would not reopen as long as he was Fire Marshal. (Id: ¶¶ 201).

On December 15, 2011, plaintiff met with the owner of the properties, Tommy Dang, who advised plaintiff that the Kansas City Office of the Fire Marshal and the Kansas City Office of Codes stated that the code violations would not be cleared while plaintiff remained a tenant. (Id: ¶¶ 209-11). Mr. Dang was also advised by representatives at these offices that plaintiff was operating illegally and was under investigation. (Id: ¶212). Plaintiff and Mr. Dang agreed to re-assign the lease to another tenant so that the code violations could be corrected and cleared; on December 29, 2011, Mr. Dang requested plaintiff to remove all of his possessions from property located at 8111A , B, C and D, as stipulated by the Fire Marshal and code offices. (Id: ¶¶ 214-16).

Plaintiff asserts the following claims:

Count I - Failure to train or supervise - asserted against the City of Kansas City Missouri and the Kansas City Board of Police Commissioners

Count II - Excessive Force - asserted against Detective Robert Gibbs

Count III - False Arrest and Imprisonment - asserted against Officers Muhlbauer, Enig, Pronske, Campbell, Cote, Sanders, Hernandez, Johnson, Balsley, Patrice Winston, Regina Wagner, and Detective Gibbs

Count IV - Trespass - asserted against Officers Muhlbauer, Enig, Pronske, Campbell, Cote, Sanders, Hernandez, Johnson, and Balsley, and Patrice Winston, Regina Wagner, JohnHarbrucker, and J. Williamson

Count V - Improper Application for and Execution of Search Warrant - asserted against Detective Gibbs

Count VI - Abuse of Authority - asserted against Officers Muhlbauer, Enig, Pronske, Campbell, Cote, Sanders, Hernandez, Johnson, and Balsley, and Patrice Winston, and Regina Wagner

Count VII - Harassment - asserted against all defendants

Count VIII - Failure to Set Constitutionally Correct Policies and Procedure - asserted against
City of Kansas City, Missouri and the Kansas City Missouri Board of Police Commissioners

Count IX - Tortious Interference - asserted against all defendants

Count X - Malicious Prosecution - asserted against Officers Muhlbauer, Enig, Pronske, Campbell, Cote, Sanders, Hernandez, Johnson and Balsley, and Patrice Winston, and

6

Regina Wagner

Count XI - Invasion of Privacy - asserted against all defendants

Count XII - Negligence - asserted against all defendants

Count XIII - Abuse of Process - asserted against J. Williamson

Count XIV - Conspiracy - asserted against Officers Muhlbauer, Enig, Pronske, Campbell, Cote, Sanders, Hernandez, Johnson, Balsley, and Gary Majors, Jim Ready, Patrice Winston, Regina Wagner, John Harbrucker, Fire Marshall Downing, Robert Richardson, J. Williamson, and Gibbs

Count XV - Conspiracy - asserted against all defendants

Count XVI - Libel - asserted against Robert Richardson

Count XVII - Slander - asserted against Robert Richardson

## Discussion

Standard of Review

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions which are fatally flawed in their legal premises and designed to fail,

7

thereby sparing litigants the burden of unnecessary pretrial and trial activity. Palmore v. City of Pacific, 851 F.Supp.2d 1162, 1166 (E.D.Mo. 2010). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead enough facts to state a claim to relief that is plausible on its face. Id; citing, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).

When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint, and "construe those facts in the light most favorable to the [non moving party]." Id. All reasonable inferences, from the facts alleged in the complaint, must also be drawn in favor of the nonmoving party. Id. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. Id, at n.4.

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Id. "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions or a formulaic recitation of the elements of a cause of action." Id; quoting, Bell Atlantic, 550 U.S. at 554, 555. The primary issue for a court to consider is not whether the plaintiff will ultimately prevail in the lawsuit, but whether the complaint adequately states a claim, and therefore, the plaintiff is entitled to present evidence in support of that claim. Id.

A.   Temporary Injunctive Relief

Plaintiff has filed renewed motions for temporary restraining orders (docs. 92 and 93).[2]

---

[2]Plaintiff previously filed motions for injunctive relief and to cease and desist (docs. 40 and 41), asserting misconduct by defendants J. Williamson and Detective Gibbs. Upon motions for

Essentially, plaintiff complains that his right to freedom of assembly, right to be free from unreasonable search and seizure, and the right to due process was violated by purportedly illegal searches conducted at his residence on or about October 22, 2010, August 12, 2011, and December 10, 2011. Plaintiff also complains about the cessation of electrical and gas services and requests that said services be restored.

The factors to be considered in determining whether a temporary restraining order or injunctive relief should be granted are: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. Moore v. City of Brentwood, 2011 WL 2838136 *2 (E.D.Mo.); citing, Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981). Demuth v. Fletcher, 2008 WL 4151841 *2 (D.Minn.)

The last date of complained of conduct was December 10, 2011. Plaintiff states that, since that time, on or about December 15, 2011, he was informed by the property owner, Mr. Dang, that based on conversations with the Office of the Fire Marshal and the Codes Office the violations would not be cleared as long as plaintiff resided at the property. (Amended Complaint: ¶¶ 209-13). Plaintiff agreed with Mr. Dang that the property lease should be reassigned to another party, and on December 29, 2011, plaintiff was asked to remove his belongings so that the property could be inspected for code corrections. (Id: ¶¶ 214-15). Plaintiff does not complain of any further misconduct by police or city officials since that time.

---

leave to file an amended complaint (docs. 56 and 57), injunctive relief was denied without prejudice so that plaintiff could add additional defendants (doc. 62).

9

The irreparable harm factor focuses on the harm or potential harm to the plaintiff of defendant's conduct or threatened conduct, and a plaintiff seeking injunctive relief must establish that it is likely to suffer irreparable harm in the absence of the relief sought. Id. Plaintiff no longer resides at the Troost property and does not allege continued misconduct of any sort; therefore, there appears to be little threat of future misconduct of the sort alleged.[3] Because of the ten-day limit on restraining orders, and the absence of current club activity, damages could not be cured by a TRO. Consequently, plaintiff fails to demonstrate irreparable harm if injunctive relief is not granted. In the absence of a finding of irreparable harm, plaintiff's claim for injunctive relief is rendered moot. U.S. v. Hoffman, 560 F.Supp.2d 772, 776 (D.Minn. 2008) (the absence of a finding of irreparable injury is alone sufficient ground for denying injunctive relief); see also, Moore v. City of Brentwood, 2011 WL 2838136 at, *2.

Generally, a pending claim for injunctive relief becomes moot when the challenged conduct ceases and there is no reasonable expectation that the wrong will be repeated. Snider v. City of Cape Girardeau, 2012 WL 966639 *8 (E.D.Mo.)(internal quotation and citation omitted). Plaintiff does not claim and the record does not indicate that he remains subjected to the complained of conduct, and there is no evidence to suggest that the alleged misconduct will continue if circumstances change. Consequently, the temporary injunctive relief plaintiff seeks fails to state a claim upon which relief can be granted, and the motions will be denied.

### B. Motion for Return of Property

---

[3] Moreover, the court takes judicial notice that the Kansas City Council has been considering the implementation of regulations providing the police additional tools to combat disruptive house parties and illicit after-hours entertainment venues in residences and commercial venues. *Kansas City Star, Nov. 19, 2012*.

10

Plaintiff seeks the return of property, pursuant to Fed.R.Civ.P. 64, purportedly taken by certain defendant police officers upon the order of defendant Detective Gibbs. Plaintiff states that on December 10, 2011, property, including cash, papers, and alcoholic beverages were taken from the premises of 8111A-8111D. There is no cause of action under § 1983 for an unconstitutional taking of personal property where the state provides an adequate post deprivation remedy. Chambers v. Sorocko, 2008 WL 474330 *2 (E.D.Mo.). The State of Missouri provides the post deprivation remedy of replevin for the recovery of personal property. Id. In a replevin action, the claimant may obtain immediate possession of the personal property upon filing an affidavit and a bond with the court. Clark v. Kansas City Missouri School Dist., 375 F.3d 698, 703 (8th Cir. 2004); citing, Mo.R.Civ.P. 99.03 and 99.06. Alternatively, a claimant may request in writing a hearing in ten days to determine the claimant's right to possession of the property pending trial. Id; citing, Mo.R.Civ.P. 99.09. Plaintiff has not sought relief under either avenue, and the motion will be denied.

### C. Class Certification

Plaintiff seeks certification of a class comprised of members of the Club pursuant to Fed.R.Civ.P. 23. In order to obtain certification of the proposed class plaintiff must prove that his case meets the four prerequisites outlined in Rule 23(a) which states that: (1) the class must be so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Smith v. LeBlanc, 2003 WL 23101806 *1 (D.Minn.).

A review of the circumstances presented here, makes clear that plaintiff fails to satisfy the

fourth requirement, adequacy of representation. In analyzing this factor consideration should be given to whether, among other things, plaintiff will vigorously prosecute the interests of the class through qualified counsel. Id, at *2. As a pro se litigant, plaintiff fails to satisfy this requirement because as one untrained in the law, he cannot fairly and adequately protect the interests of the other class members. Id.[4] Because plaintiff does meet this requirement, the motion must be denied and further analysis is unnecessary.

D. Appointment of Counsel

Plaintiff has also filed a motion for appointment of counsel, but because this case is not being certified for a class action and further discovery is needed, the motion for appointment of counsel will be denied. Stewart v. Missouri Department of Corrections, 2007 WL 2782529 *3 (W.D.Mo.). There exists no statutory or constitutional right for an indigent to have counsel appointed in a civil action for damages unless, within the court's discretion, the circumstances are such that would properly justify such a request. Id. I seldom impose on counsel by requesting pro se work. Plaintiff may, of course, seek counsel who may consider the case has merit and may be productive.

E. 42 U.S.C. Section 1983

The motions pending and related filings suggest far more complexity than the basic issues and facts pleaded in the amended complaint seem to warrant. There are two theories for asserting

---

[4] See, Johns v County of San Diego, 114 F.3d 874, 876 (9th Cir. 1997)(non-attorney may appear pro se on his own behalf, but may not represent others); Covington v Allsbrook, 636 F.2d 63, 64 (4th Cir. 1980)(non-lawyer inmate was not qualified to represent fellow inmates in class action claim), *abrogated on other grounds by* Becker v. Montgomery, 532 U.S. 757 (2001).

12

Federal Constitutional violations - - a First Amendment claim and a Fourth Amendment claim. The First Amendment theory seeks protection of rights to associate and assemble. See Counts 14 and 15. This seems to be the heart of the case, and I conclude it is unsound, as noted below.

The Fourth Amendment theory complains of two unlawful searches, two false arrests, the use of excessive force in connection with an arrest, and damage from a no-knock intrusion on plaintiff's premises. See Counts 2, 3, 4 and 5.[5]

Failure to train and some deficiency in Police Board policy are pled in non-specific terms, but most plausibly relate to the claim of protection for a private club operating in a residential setting (sometimes condemned as a "party house"). See Counts 1 and 8.

Also alleged are violations of State law. See Counts 4, 7, 9, 10, 11, 12, 13. Delayed rulings and pre-trial preparation seem appropriate for the State law claims. If the Federal Constitutional claims fail, or narrow to small segments, either in this ruling or after discovery and summary judgment practice, I am likely to decline jurisdiction over such claims not intrinsically related to issues being prepared for trial. The motions to dismiss State law claims will therefore be denied without prejudice, but with instructions not to prepare them further until summary judgment practice is exhausted on the Federal claims.[6]

---

[5] Although Count 4 is asserted as a "trespass" claim, which would be a State law violation, it also refers to Fourth Amendment rights. Considering the descriptive paragraphs (26-65) it will be liberally construed to assert an unlawful search under that Amendment, so a dual claim will be considered.

[6] It may be worth mentioning that the most novel claim - cutting off utilities - probably fits into Count 9 (Tortious Interference). I am not aware of a Federal Constitutional claim relating to this allegation.

Turning to the merits of the Federal claims as a matter of pleading, it is apparent that the pro se plaintiff has mistaken his First Amendment rights. In City of Dallas v. Stranglin, 490 U.S. 19 (1989) the Supreme Court limited First Amendment rights under the right to assemble, on which plaintiff relies, to intimate or expressive association. The ruling stated, "We do not think the Constitution recognizes a generalized right of 'social association' that includes chance encounters in dance halls." Id at 25. Stranglin surely applies also to drinking, card playing, and similar social activities which plaintiff mistakenly supposes has First Amendment protection. The Stranglin rule has been applied by then Chief Judge Kopf to race track patrons Vanhorn v. Nebraska State Racing Com'n, 304 F.Supp.2d 1151, 1168-9 (D.Neb. 2004). While there may be some protective legal principles that would help shield plaintiff from over-zealous governmental regulation, he has no support in the First Amendment, as applied to the States. If there has been a conspiracy to tamp down the perceived problems arising at "party houses," plaintiff's recourse, if any, is outside a First Amendment lawsuit. Counts 14 and 15 will therefore be dismissed, and insofar as plaintiff may claim failure to train police officers about First Amendment rights to operate "party houses" (Count 1) or failure to adopt "party house" policies in compliance with the First Amendment (Count 8), it is plaintiff who is mistaken as to such rights.

The Federal law aspects of the case are thus narrowed to consideration of Counts 2, 3, 4 and 5. Detective Gibbs is alleged to have used excessive force in connection with an arrest in 2011. He and Police Officer Johnson are alleged to have made separate false arrests, causing confinement or imprisonment of plaintiff on December 10, 2011 and October 22, 2010, respectively.[7]

---

[7] The pleading sometimes refers to the 2010 event as occurring on October 3. Doc. 63, pp. 12-13. I shall assume the correct date is the 22nd.

14

The excessive force allegation asserted in Count 2 contains some search complaints that are duplicated elsewhere, but relates uniquely to the manner of seizure of plaintiff by defendant Gibbs. Paragraphs 131-134 recite that Detective Gibbs observed him lying on the floor in restraints and "escorted" him to a chair where he was "ordered to sit down." As a matter of law I am satisfied that the alleged conduct could not be properly characterized as a use of excessive force by defendant Gibbs.

The false arrest allegations asserted in Count 3 against defendants Gibbs and Johnson, in 2011 and 2010 respectively, are set forth in standard factual detail as a matter of pleading. As Fourth Amendment claims I find no sufficient criticism by defendants, and they may be pursued, subject to later review of any factual deficiencies or defenses on summary judgment. Beyond those defendants no allegations have been made that other specified defendants arrested and imprisoned plaintiff.

In Count 5, defendant Gibbs is charged with a Fourth Amendment search violation, involving applying for and receiving a no-knock warrant or in searching without a warrant and without adequate cause. I will not fault the pleading on this claim but await development of the facts and a summary judgment motion, if appropriate.

Count 4, labeled as a charge of "trespass" (a State law violation), also cites the Fourth Amendment. Plaintiff names all known defendants who were in a searching or investigatory role in the 2011 and 2010 incidents where Officers Johnson and Gibbs are identified as the arresting officers. Although the Count 4 allegations are arguably inadequate to state Fourth Amendment violations, in the exercise of discretion I will deny the motions to dismiss as to the named defendants, since the search and seizure issues will be explored as to the arresting officers. The practical result is that the City employees of the Regulated Industries Division will remain in the

case along with the police personnel as alleged Fourth Amendment violators, at least until summary judgment motions, based on developed facts, are presented.

Accordingly, it is hereby

ORDERED that the motion to dismiss filed by the Board of Police Commissioners and the police defendants (ECF doc. 87) is GRANTED in part and DENIED in part, the Board is DISMISSED as a named defendant in this action, and claims alleged against the police defendants remain pending consistent with this opinion. It is further

ORDERED that plaintiff's motions for temporary restraining orders (ECF docs. 92 and 93) are DENIED; the motion for return of property (ECF doc. 154) is DENIED; the motion for class certification (ECF doc. 189) is DENIED; the motion to appoint counsel (ECF doc. 204) is DENIED without prejudice; and the motion for discovery (ECF doc. 213) is GRANTED [8] consistent with this opinion. It is further

ORDERED that the motion to dismiss filed by the City of Kansas City, Mo. (ECF doc. 106) is GRANTED, the City is DISMISSED as a named defendant in this action. It is further

ORDERED that the motion to dismiss filed by City Regulators Gary Majors and Jim Ready (ECF doc. 108) is GRANTED and these defendants are DISMISSED as named defendants in this action; and the motion to dismiss filed by City employees, John Harbrucker, Regina Wagner, and Patrice Winston (ECF doc. 110) is DENIED in part, consistent with this opinion. It is further

ORDERED that the motion to dismiss filed by Det. Gibbs (ECF doc. 137) is GRANTED in

---

[8] The parties are directed to confer and file a joint proposed scheduling order within thirty days from the date of this order, confined for now to the Federal claims in Counts 2, 3, 4 and 5, relating to October 22, 2010 and December 10, 2011.

part and DENIED in part, consistent with this opinion. It is further

ORDERED that the clerk of the court mail a copy of this order by regular mail and certified mail, return receipt to plaintiff at:

5005 Olive Street

Kansas City, Missouri 64130

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

March  25 , 2013

Kansas City, Missouri